## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

JULIUS E. MONTGOMERY,

    Plaintiff,

v.

    Civil Action No. TDC-23-1248

TYLNN BRADSHAW,

    Defendant.

## MEMORANDUM OPINION

Self-represented Plaintiff Julius E. Montgomery, an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendant Tylnn Bradshaw, in which Montgomery alleges constitutional violations arising from the use of excessive force against him while he was confined at the Clifton T. Perkins Hospital Center ("Perkins") in Jessup, Maryland. Bradshaw has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On April 24, 2022, Montgomery was confined at Perkins, a maximum-security psychiatric hospital operated by the Maryland Department of Health, for a determination of whether he was competent to stand trial as a criminal defendant in the Circuit Court for Harford County, Maryland. In his verified Complaint, Montgomery alleges that at approximately 1:00 p.m. that day, after he had been physically separated from another patient following a verbal altercation with that patient,

Bradshaw, a Perkins security officer, physically assaulted him ("the incident"). Montgomery alleges that although he was walking away from the other patient, Bradshaw placed him in a choke hold so that he could not breathe, punched him in the mouth, and moved him into a restraint room, where Bradshaw then struck Montgomery in the face and grinded his fist into Montgomery's face, head, and throat, collapsing his airway. Montgomery alleges that he informed Bradshaw multiple times that he could not breathe and referenced Freddie Gray, a citizen who died during a 2015 encounter with police in Baltimore, Maryland, but Bradshaw continued to choke him and said, "Well, I guess you['re] the white Fredd[ie] Gr[a]y." Compl. at 3, ECF No. 1. Montgomery claims that he was non-combative during this incident, which lasted approximately two minutes. The next day, on April 25, 2022, Montgomery saw a doctor, who determined that his injuries included swelling on his left jaw, right temple contusions, and broken skin in his scalp. He received pain medication, but his request for x-rays was denied. Montgomery asserts that he continues to have pain in his neck area as a result of the incident.

Montgomery also states that he filed a grievance with Perkins regarding the incident, and that the Chief Executive Officer ("CEO") of Perkins "found after investigation [and] viewing of cameras the Grievance to be valid (physical abuse)." *Id.* at 2.

In the Complaint, Montgomery asserts a claim under 42 U.S.C. § 1983 based on this alleged excessive force. Construing the Complaint liberally, as is required when the plaintiff is self-represented, the Court views the claim as alleging a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which protects against punishment of pre-trial detainees.

On November 17, 2023, Bradshaw filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Although Montgomery was notified of his right to file a memorandum in

opposition to the Motion, his only response was to file correspondence in which he requested clarification of the Motion from the Court. Upon review of the submitted materials, the Court finds that no clarification is warranted, and no additional response from Montgomery is necessary, in order to resolve the Motion.

**DISCUSSION**

In the Motion, Bradshaw argues that he is immune from suit in his official capacity under the Eleventh Amendment to the Constitution, that Montgomery has failed to allege a plausible claim that his constitutional rights were violated, that he is entitled to qualified immunity, and that any state law tort claims against him must be dismissed.

## I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Bradshaw filed the Motion as a Motion to Dismiss, or in the Alternative, for Summary Judgment. Typically, when deciding a motion to dismiss under Rule 12(b)(6), a court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Here, Bradshaw has attached several exhibits, including a declaration from Dr. Scott Moran, CEO of Perkins; a letter from the State's Attorney for Howard County, Maryland declining to prosecute Bradshaw based on the incident; and Perkins's policy on the use of restraints. Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, the notice requirement has been satisfied by the title of Bradshaw's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 245 (4th Cir. 2002). Montgomery has not filed an affidavit or declaration under Rule 56(d) or any other request for discovery. Under these circumstances, the Court will construe the Motion as a Motion for Summary Judgment.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to

4

judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Eleventh Amendment

Bradshaw argues that the Complaint must be dismissed to the extent that it asserts a claim against him in his official capacity because he is a state official. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). "[A] suit against a state official in his or her official capacity is . . . a suit against the official's office" and thus is the equivalent of "a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

5

Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12–201(a) (West 2021), it has not waived its immunity under the Eleventh Amendment to constitutional claims asserted in federal court. Accordingly, Bradshaw is immune from suit for actions taken in his official capacity. Therefore, to the extent that the Complaint asserts such a claim, the claim will be dismissed.

## III.    Excessive Force

Bradshaw argues that the allegations in the Complaint fail to establish that he used excessive force against Montgomery in violation of his constitutional rights. Liberally construed, the Complaint alleges that Montgomery was subjected to excessive force as a pretrial detainee in violation of the Fourteenth Amendment. On such a claim, a plaintiff must show that force was used "purposely or knowingly," and that it was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Such a claim need not establish a subjective intent to punish or cause harm. *See id.* Objective reasonableness turns on the "facts and circumstances" of the particular case. *Dilworth v. Adams,* 841 F.3d 246, 255 (4th Cir. 2016). The Court considers "the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397.

In the case of involuntarily committed patients at state psychiatric facilities, the United States Supreme Court has provided additional guidance. Under *Youngberg v. Romeo*, 457 U.S. 307 (1982), "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321-22; *see Patten v. Nichols*, 274 F.3d 829, 837-38 (4th Cir. 2001) (applying the *Youngberg* standard to involuntarily committed psychiatric patients). Under the *Youngberg* standard, a state must provide such an involuntarily committed patient with reasonable

conditions of safety, including "adequate food, shelter, clothing, and medical care," as well as "freedom from unreasonable restraints." *Youngberg*, 457 U.S. at 315, 321.

In assessing whether conditions are constitutionally adequate, courts apply the "professional judgment" standard, under which "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Id.* at 321. Decisions made by medical or other professionals are presumptively valid, and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Id.* at 323; *see Patten*, 274 F.3d at 845-46 (stating that the defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional").

Viewing the facts in the light most favorable to Montgomery, the Court cannot conclude that summary judgment is warranted at this time. In his verified Complaint, Montgomery asserts that his constitutional rights were violated when Bradshaw unnecessarily assaulted him and held him in a choke hold. The Complaint asserts that the incident occurred after and not during a confrontation with another patient, that Montgomery had already turned to walk in the opposite direction of the patient with whom he had the altercation when Bradshaw assaulted him, and that Montgomery was non-combative during the incident. Even if there was a basis to restrain Montgomery at that point, the conduct he has alleged, which includes punches to the face, grinding knuckles into his face and throat, placing him in a choke hold to the point that he could not breathe, and verbally taunting him, could fairly be construed as going beyond normal restraint and could support a claim of excessive force under the Fourteenth Amendment, whether applied to a pretrial detainee or an individual committed to a psychiatric hospital.

7

Bradshaw's arguments to the contrary are unpersuasive. Although in the Motion, Bradshaw asserts that Maryland law and Perkins policy permitted him to restrain a patient in situations where a patient poses a serious and imminent danger, and that the circumstances justified his treatment of Montgomery, the allegations that the altercation with the other patient had already subsided, that Montgomery was non-combative, and that the use of force went beyond mere restraint, at a minimum, create a genuine issue of material fact on whether Bradshaw's actions were justified or constituted excessive force. Notably, Bradshaw has not submitted any evidence that directly refutes Montgomery's allegations. Rather, he has submitted a declaration by Dr. Moran, the CEO and clinical director at Perkins, which states that Perkins investigated Montgomery's allegation and found it to be "unfounded/inconclusive," Moran Decl. ¶ 7, Mot. Ex. 1, ECF No. 11-2, and a letter noting that the State's Attorney declined to prosecute Bradshaw, neither of which directly refute Montgomery's allegations, much less demonstrate that Montgomery has not established a genuine issue of material fact that precludes summary judgment. Even Dr. Moran's statement is the subject of a dispute of fact, as Montgomery has asserted that the CEO of Perkins "found after investigation" and "viewing of cameras" that his grievance was "valid (physical abuse)." Compl. at 2. Where Bradshaw has presented no evidence to refute the allegations in the Complaint, and there are genuine issues of material fact, the Motion for Summary Judgment will be denied.

## IV.    Qualified Immunity

Bradshaw also asserts that he is entitled to qualified immunity from Montgomery's Fourteenth Amendment claim based on excessive force. He asserts that the Complaint, taken as true, does not describe actions by Bradshaw that violated a clearly established constitutional right of which a reasonable public official would have known.

Government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome a claim of qualified immunity from a § 1983 claim, a plaintiff must show that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* Because one of the purposes of qualified immunity is to "protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government,'" the United States Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987) (citations omitted). If the Court determines that the government official took actions that a reasonable officer could have believed were lawful, then the official is entitled to dismissal before discovery. *Id.*

As discussed above, Montgomery has adequately alleged a Fourteenth Amendment claim against Bradshaw based on his assertions that Bradshaw used excessive force against him following an altercation with another patient, and his asserted facts establish at a minimum a genuine issue of material fact on whether such a violation occurred. *See supra* part III. The right of a pretrial detainee to be free from excessive force was clearly established at the time of the incident. *See United States v. Cobb*, 905 F.2d 784, 785-86, 788 (4th Cir. 1990) (holding that a pretrial detainee beaten up by security personnel while in detention possessed a liberty interest under the Due Process Clause of the Fourteenth Amendment to be free from the use of excessive

force that amounts to punishment). The Court will therefore deny the Motion on the issue of qualified immunity.

### V.  State Law Claims

Finally, Bradshaw moves to dismiss any state law tort claims against him in his official capacity. The Court does not construe Montgomery's Complaint as asserting any state law claim, as Montgomery specifically states that he is filing suit pursuant to 42 U.S.C. § 1983 without expressing any intent to pursue a state law claim. Accordingly, the Court need not address those arguments.

### CONCLUSION

For the foregoing reasons, Bradshaw's Motion to Dismiss, or in the Alternative, for Summary Judgment, will be GRANTED IN PART and DENIED IN PART. The Motion, construed as a Motion for Summary Judgment, will be granted as to any claims against Bradshaw in his official capacity and will be otherwise denied. A separate Order shall issue.

Date:  July 24, 2024

THEODORE D. CHUANG
United States District Judge